# **Exhibit 1**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| INDIAN HARBOR INSURANCE COMPANY,<br><br>                    Plaintiff and<br>                    Counter-Defendant,<br><br>          v.<br><br>METROPOLITAN NASHVILLE AIRPORT<br>AUTHORITY,<br><br>                    Defendant and<br>                    Counter-Plaintiff. | Case No. 1:21-cv-09578-AKH<br><br>JURY DEMAND |

**DEFENDANT METROPOLITAN NASHVILLE AIRPORT AUTHORITY'S RESPONSE**
**IN OPPOSITION TO INDIAN HARBOR INSURANCE COMPANY'S MOTION FOR**
**SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................... 1

II.     LEGAL STANDARD ............................................................................. 2

III.    STATEMENT OF THE AVAILABLE EVIDENCE ................................... 3

        A.   The Underlying Litigation and the Airport's Notice ...................... 3

        B.   The Insurance Policy ..................................................................... 3

        C.   Indian Harbor's Response to the Airport's Notice .......................... 4

IV.     ARGUMENT ......................................................................................... 6

        A.   Indian Harbor Waived the Right to Deny Coverage on the Basis
             of Timely Notice ........................................................................... 7

        B.   Even if the Airport's Notice Defenses Do Not Create a Dispute of
             Material Fact, the Airport's Notice was Timely According to the
             Terms of the Policy ..................................................................... 10

             1.   The Policy Permits, but Does Not Require, Notice of a
                  POLLUTION CONDITION as Soon as is Practicable. ................... 11

             2.   The Airport Was Not Required to Give Notice of the
                  Tolling Agreement. ............................................................. 14

        C.   Alternatively, Indian Harbor Must Demonstrate Prejudice from
             Delayed Notice, a Burden it Has Failed to Meet. ......................... 17

             1.   Indian Harbor's Contention that New York has a Dual-
                  Class Notice Regime Would Render the Regime
                  Unconstitutional Under the Dormant Commerce Clause ................ 18

             2.   Additionally, Indian Harbor's Dual-Class Notice Regime
                  Argument Would Render New York's Law
                  Unconstitutional Under the Privileges and Immunities
                  Clauses ............................................................................. 21

V.      CONCLUSION ..................................................................................... 22

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*
  485 F.3d 85 (2d Cir. 2007)..................................................................................... 13

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986)............................................................................................... 2

*City of Philadelphia v. New Jersey*
  437 U.S. 617 (1978).............................................................................................. 18

*Coventry First, LLC v. McCarty*
  605 F.3d 865 (11th Cir. 2010) ............................................................................ 20

*Galli v. Metz*
  973 F.2d 145 (2d Cir. 1992)................................................................................. 12

*Garza v. Marine Transp. Lines, Inc.*
  861 F.2d 23 (2d Cir. 1988)................................................................................... 12

*Granholm v. Heald*
  544 U.S. 460 (2005).............................................................................................. 18

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l*
  No. 16 Civ. 2767, 2019 U.S. Dist. LEXIS 56635 (S.D.N.Y. Mar. 28, 2019).................. 12

*Indian Harbor Ins. Co. v. City of San Diego*
  972 F. Supp. 2d 634 (S.D.N.Y. 2013)................................................................... 17

*KeySpan Gas E. Corp. v. Munich Reinsurance Am., Inc.*
  15 N.E.3d 1194 (N.Y. 2014).................................................................................. 8

*La Guardia v. Cavanaugh*
  53 N.Y.2d 67 (1981) ............................................................................................. 15

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*
  424 F.3d 195 (2d Cir. 2005)................................................................................. 11

*Life Partners., Inc. v. Morrison*
  484 F.3d 284 (4th Cir. 2007) ............................................................................... 20

*Long Island Lighting Co. v. Allianz Underwriters Ins. Co.*
  961 N.Y.S.2d 419 (App. Civ. 2013), ................................................................... 8

*Long Island Lighting Co. v. American Re-Insurance Co.*
  998 N.Y.S.2d 169 (App. Div. 2014) ............................................................. 8, 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
    475 U.S. 574 (1986) ............................................................................................... 2

*Morrisania Towers Housing Co. Ltd. Partnership v. Lexington Insurance Co.*
    963 N.Y.S.2d 4 (App. Div. 2013) ................................................................... 7, 10

*Muzak Corp. v. Hotel Taft Corp.*
    133 N.E.2d 688 (N.Y. 1956) ............................................................................. 13

*New York v. AMRO Realty Corp.*
    936 F.2d 1420 (2d Cir. 1991) ........................................................................... 14

*Or. Waste Sys., Inc. v. Dep't Env't Quality of Or.*
    511 U.S. 93 (1994) ............................................................................................. 18

*Paul v. Virginia*
    75 U.S. 168 (1869) ............................................................................................. 21

*Reyes v. Metromedia Software, Inc.*
    840 F. Supp. 2d 752 (S.D.N.Y. 2012) .............................................................. 12

*RJE Corp. v. Northville Indus. Corp.*
    329 F.3d 310 (2d Cir. 2003) ............................................................................. 11

*Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan*
    7 F.3d 1091 (2d Cir. 1993) ............................................................................... 12

*SEC v. Nat'l Secs., Inc.*
    393 U.S. 453 (1969) ..................................................................................... 19, 20

*Shaw Group, Inc. v. Triplefine Int'l Corp.*
    322 F.3d 115 (2d Cir. 1993) ............................................................................. 11

*State Farm Mut. Auto. Ins. Co. v. Linero*
    786 N.Y.S.2d 580 (App. Div. 2004) ................................................................. 16

*Supreme Court of Va. v. Friedman*
    487 U.S. 59 (1988) ............................................................................................. 22

*Toomer v. Witsell*
    334 U.S. 385 (1948) ........................................................................................... 21

*Trans Pacific Leasing Corp. v. Aero Micronesia, Inc.*
    26 F. Supp. 2d 698 (S.D.N.Y. 1998) ................................................................ 13

*Travis v. Yale & Towne Mfg. Co.*
    252 U.S. 60 (1920) ............................................................................................. 21

*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*
    550 U.S. 330 (2007) ........................................................................................... 19

*United States v. Kopp*
   110 F. 160 (W.D. Wash. 1901) ........................................................................ 21

*United States v. Stanley*
   109 U.S. 3 (1883) ......................................................................................... 22

*W. & S. Life Ins. Co. v. State Bd. Of Equalization of Cal.*
   451 U.S. 648 (1981) ..................................................................................... 18

*Westchester Resco Co., L.P. v. New England Reinsurance Corp.*
   818 F.2d 2 (2nd Cir. 1987) ............................................................................ 14

**Statutes**

15 U.S.C. § 1012 ................................................................................................ 19

15 U.S.C. §§ 1011 .............................................................................................. 19

N.Y. Insurance Law § 3420 ........................................................................ passim

**Constitutional Provisions**

U.S. Const. amend. XIV, § 1 ............................................................................ 21

U.S. Const. art. I, § 8, cl. 3 ............................................................................... 18

U.S. Const. art. IV, § 2, cl. 1 ............................................................................ 21

Defendant/Counter-Plaintiff Metropolitan Nashville Airport Authority (the "Airport") opposes Plaintiff/Counter-Defendant Indian Harbor Insurance Company's ("Indian Harbor") Motion for Summary Judgment. (Docket Entry ("D.E.") 15.) The Motion fails to establish that Indian Harbor is entitled to summary judgment on its declaratory judgment claim. Accordingly, Indian Harbor's Motion should be denied.

## I.   INTRODUCTION

Indian Harbor has filed a Motion for Summary Judgment, the essential grounds for the motion which are:

1.      Indian Harbor contends that the insurance policy (the "Policy") required the Airport to tender notice of a "POLLUTION CONDITION" as soon as practicable, and the Airport failed to provide timely notice for the POLLUTION CONDITION precipitating the claim at issue. (D.E. 18 at 21–24[1].) The Airport demonstrates *infra* at Parts IV.A and IV.B.1 that (a) Indian Harbor waived any notice defense by waiting six months to deny coverage, without justification, after the Airport notified Indian Harbor of the underlying lawsuit and (b) by the terms of the Policy and under New York law, the Airport's mandatory notice obligation did not mature until it received a CLAIM arising from the POLLUTION CONDITION.

2.      Indian Harbor contends the Airport's entry into a tolling agreement with Colonial Pipeline Company ("Colonial") in April 2020 (the "Tolling Agreement") constitutes a "CLAIM" and that the Airport's notice four months after signing the Tolling Agreement was untimely notice as a matter of law. (D.E. 18 at 21–24.) The Airport demonstrates *infra* at Part IV.B.2 that Indian

---

[1] This document refers to page numbers imprinted in the headers of filed documents.

Harbor's argument is defective for two reasons: (a) it waived this argument by not including it in its first denial letter; and (b) by the terms of the Policy, the Tolling Agreement is not a "CLAIM."

3.      Finally, Indian Harbor contends the timing of the Airport's notice warrants denial of coverage even if it suffered no prejudice from alleged delayed notice. (D.E. 18 at 24–25.) The Airport demonstrates *infra* at Part IV.C that Indian Harbor's "no prejudice required" argument is wrong because if N.Y. Insurance Law § 3420(a)(5) is held to establish a no-prejudice rule only for policies issued and delivered outside New York, the law unconstitutionally discriminates against non-citizens under the Dormant Commerce Clause and the Privileges and Immunities Clauses, rendering the Policy subject to a notice-prejudice rule.

## II.    LEGAL STANDARD

On a motion for summary judgment, the presently available record must be viewed in the light most favorable to the opposing party (here the Airport) and all inferences must be drawn in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). What facts there are in this case (absent discovery) must be viewed as a unified whole, so that the Airport is given the full benefit of its proof.

Summary judgment is inappropriate unless the evidence is so one-sided that a reasonable fact finder could arrive at only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). A dispute over irrelevant or unnecessary facts will not preclude summary judgment. *Id.* at 248.

For these reasons, and because this is a summary judgment motion, the Airport recites the evidence which demonstrates there are disputes of material fact that would preclude judgment in Indian Harbor's favor concerning: (1) Indian Harbor's waiver of its notice defenses through its delay in denying coverage thereon; and (2) the Airport's timely notice of the event constituting a "CLAIM" under the Policy, which triggered its first mandatory notice obligation under the Policy.

2

Additionally, summary judgment should be denied because Indian Harbor's position would render the statute upon it relies unconstitutional—by discriminating on the basis of citizenship without adequate justification.

### III.     STATEMENT OF THE AVAILABLE EVIDENCE

#### A.     The Underlying Litigation and the Airport's Notice

On April 6, 2020, the Airport and Colonial executed a Tolling Agreement. (Pl.'s Statement of Material Facts ("SMF") ¶ 29, Def.'s Resp. ¶ 29.) The Tolling Agreement explicitly states that Colonial and the Airport were "interested in resolving by agreement potential claims between them" and "[n]either the execution of this Agreement nor the agreement to any of its provisions constitutes an admission of liability." (Pl.'s SMF ¶¶ 30-31, Def.'s Resp. ¶¶ 30-31.) On July 31, 2020, Colonial filed suit against the Airport and another party for damages arising out of a gasoline pipeline strike that occurred on the Airport's property on April 9, 2019 (the "Line Strike"), *Colonial Pipeline Co. v. Metropolitan Nashville Airport Authority, et al.*, No. 3:20-cv-00666 (M.D. Tenn.) (the "Line Strike Suit"). (Pl.'s SMF ¶ 34, Def.'s Resp. ¶ 34.)

The Airport gave Indian Harbor notice of the Line Strike Suit on August 26, 2020 (less than one month later) by sending Indian Harbor a copy of the complaint ("Line Strike Complaint") and related documents. (Pl.'s SMF ¶ 38; Def.'s Resp. ¶ 38.) The Line Strike Complaint specifically references the Tolling Agreement.  (Def.'s Statement of Additional Material Facts ("SAMF") ¶ 53.)

#### B.     The Insurance Policy

The Policy is a Project Specific Contractor's Pollution Legal Liability Policy, Policy Number CPL7446068 for the policy period from March 1, 2017, to March 1, 2020. (Pl.'s SMF ¶ 3; Def.'s Resp. ¶ 3.) Indian Harbor drafted the Policy. (Def.'s SAMF ¶ 53.)

Under Section VII.A.1 of the Policy, the Airport "must notify" Indian Harbor "as soon as practicable" of the following:

    a.    a CLAIM;

    b.    BODILY INJURY or PROPERTY DAMAGE which may result in a CLAIM;

    c.    a POLLUTION CONDITION; **and**

    d.    a REMEDIATION EXPENSE.

(Pl.'s SMF ¶ 15; Def.'s Resp. ¶ 15.)

But Section VII.E of the Policy states:

If, during the POLICY PERIOD, any NAMED INSURED first becomes aware of a POLLUTION CONDITION for which any INSURED reasonably believes may result in a CLAIM (thereafter referred to as a "Circumstance") for which this Policy may apply, the NAMED INSURED may provide written notice of the POLLUTION CONDITION to the Company during the POLICY PERIOD.

(Pl.'s SMF ¶ 15; Def.'s Resp. ¶ 15; Def.'s SAMF ¶ 54.)

Under Section VII.C of the Policy, Indian Harbor's "right and . . . duty" to defend arises when a "CLAIM" is asserted. (Def.'s SAMF ¶ 55.)  A CLAIM is defined as:

a monetary demand or notice, or assertion of a legal right alleging liability or responsibility on the part of any INSURED and includes a lawsuit, petition, or governmental or regulatory action commenced against any INSURED.

CLAIM does not include any of the foregoing arising out of a POLLUTION CONDITION reported under a prior policy issued by the Company or any entity affiliated with the Company.

(Pl.'s SMF ¶ 16; Def.'s Resp. ¶ 16.)

## C.    Indian Harbor's Response to the Airport's Notice

On August 28, 2020, Indian Harbor sent an email to the Airport expressly acknowledging that "[w]e understand that the litigation concerns an April 9, 2019 pipeline strike." (Pl.'s SMF ¶¶ 39, 41; Def.'s Resp. ¶¶ 39, 41; Def.'s SAMF ¶ 56.) Indian Harbor did not disclaim coverage on

the basis of untimely notice, but instead reserved the defense of "timeliness of notice." (Pl.'s SMF ¶¶ 40-41; Def.'s Resp. ¶¶ 40-41; Def.'s SAMF ¶ 56.)

On February 18, 2021—six months after receiving the Airport's notice—Indian Harbor denied coverage, arguing for the first time that (1) the Line Strike did not result from "CONTRACTING SERVICES," (2) the "Professional Liability" exclusion bars coverage (ultimately Indian Harbor abandoned this argument), and (3) the Airport did not give timely notice of the Line Strike. (Pl.'s SMF ¶¶ 41-42; Def.'s Resp. ¶¶ 41-42.)

In support of its argument that the Line Strike did not result from CONTRACTING SERVICES, Indian Harbor apparently looked outside the four corners of the Line Strike Complaint. (Pl.'s SMF ¶ 41; Def.'s Resp. ¶ 41.)

As an aside, Indian Harbor also denied coverage for allegedly late notice for the first time: "we also note that the Airport Authority did not comply with the [notice] condition since the April 9, 2019 pipeline strike was not reported to [sic] until August 26, 2020." (Pl.'s SMF ¶ 41; Def.'s Resp. ¶ 41.)

The February 18, 2021 letter also acknowledged that "Colonial and the Airport . . . entered into a [T]olling [A]greement on April 6, 2020," but Indian Harbor did not argue that the Tolling Agreement was a "CLAIM" that triggered the Airport's notice obligations. (Def.'s SAMF ¶ 57.) The Tolling Agreement by its terms stated that Colonial and the Airport were "interested in resolving by agreement potential claims between them" and "[n]either the execution of this Agreement nor the agreement to any of its provisions constitutes an admission of liability." (Pl.'s SMF ¶ 30; Def.'s Resp. ¶ 30.)

The Airport responded on March 3, 2021, explaining that the factual allegations in the Line Strike Complaint indicated that the Line Strike was a covered occurrence. (Pl.'s SMF ¶ 43; Def.'s

Resp. ¶ 43.) Indian Harbor replied on March 11, 2021, and again denied coverage for the same

reasons stated in its previous letter. (Pl.'s SMF ¶ 44; Def.'s Resp. ¶ 44.) On May 3, 2021, the

Airport reiterated its coverage position, noting that the defenses Indian Harbor raised in the March

11 letter were outside the four corners of the Line Strike Complaint, and the Airport demanded

Indian Harbor's participation in the Airport's defense. (Pl.'s SMF ¶ 45; Def.'s Resp. ¶ 45.) On

June 16, 2021, Indian Harbor partially relented, agreeing to participate in the Airport's defense

subject to a reservation of rights. (Pl.'s SMF ¶ 46; Def.'s Resp. ¶ 46.)

After doing so, and without any advance notice, Indian Harbor filed its Complaint for

Declaratory Relief in this Court (the "Complaint") arguing for the first time that the Tolling

Agreement constituted a CLAIM and that the Airport did not provide timely notice of it.  (Def.'s

SAMF ¶ 57.)

## IV.    ARGUMENT

Indian Harbor moves for summary judgment on the purported basis that the Airport did not

tender notice of a CLAIM in timely fashion. (*See* D.E. 18.) Indian Harbor, however, is not entitled

to summary judgment for the following reasons:

1.      Indian Harbor waived its untimely notice defense by waiting six months to deny

coverage, without justification, after the Airport notified Indian Harbor of the underlying lawsuit.

At the time of notification, Indian Harbor had all the information it needed to disclaim coverage

on the basis of late notice but it chose not to, and therefore, waived its defense. (*See infra* Part

IV.A.)

2.      The Airport was not required to tender notice of a POLLUTION CONDITION as

soon as practicable. To the contrary, the Policy contains a more specific provision regarding notice

of POLLUTION CONDITION[s], which must control the dispute under well-established canons

of contract interpretation. Accordingly, the Airport's mandatory notice obligation did not mature until it received a CLAIM arising from the POLLUTION CONDITION. (*See infra* Part IV.B.1.)

3.      As to the alleged late notice of reporting the Tolling Agreement as a claim, Indian Harbor waived this argument because it did not raise it until it filed suit. Even if Indian Harbor had not waived this argument, the Tolling Agreement was not a "CLAIM." The Policy's definition of "CLAIM" only includes "a lawsuit, petition, or governmental or regulatory action." The Tolling Agreement merely recognized the existence of a potential claim in the future and falls outside the definition of CLAIM. (*See infra* Part IV.B.2.)

4.      If N.Y. Insurance Law § 3420(a)(5) establishes a no-prejudice rule only for policies issued and delivered outside New York, the law unconstitutionally discriminates against non-citizens under the Dormant Commerce Clause and the Privileges and Immunities Clauses, rendering the Policy subject to a notice-prejudice rule. (*See infra* Part IV.C.)

**A.      Indian Harbor Waived the Right to Deny Coverage on the Basis of Timely Notice**

Indian Harbor moved for summary judgment solely on the basis of untimely notice, but as a matter of fact and law, it waived the right to deny coverage on this basis by waiting over six months to deny the claim after receiving notice of the Line Strike Suit. Indian Harbor does not (and cannot) deny that it had all information that it would have needed to disclaim coverage at the time it received notice of the Line Strike Suit.

A notice defect is waivable by the insurer even when it is cited in any insurance policy as a "condition precedent to coverage." In *Morrisania Towers Housing Co. Ltd. Partnership v. Lexington Insurance Co.*, the Appellate Division affirmed the trial court in holding that the insurer waived its defense where the insurer "did not issue a disclaimer letter until . . . nearly 13 months" after it "had all the information it needed to disclaim coverage based on late notice" when "it

received the tender letter from counsel for [insured]," and the insurer "offered no justification for the delay." 963 N.Y.S.2d 4, 5 (App. Div. 2013). The Appellate Division "unanimously affirmed" the grant of summary judgment to the insured which declared that the insurer was "obligated to defend and indemnify" the insured. *Id.*

An insurer's explanation for an alleged delay (Indian Harbor offers none) may be insufficient as a matter of law when the basis for denying coverage was or should have been readily apparent before the onset of the delay. Even if the Court concludes that Indian Harbor's six month delay was not so egregious as to waive its notice defense as a matter of law, its waiver—at a minimum—presents a question of fact that precludes summary judgment. In *Long Island Lighting Co. v. American Re-Insurance Co.*, the Appellate Division vacated the trial court's declaration that the insurers had no duty to defend or indemnify the insureds regarding environmental damage claims on a specific gas plant where the insured failed to provide timely notice.[2] 998 N.Y.S.2d 169, 170 (App. Div. 2014). The court held that "triable issues of fact exist as to whether the insurers waived their common-law defense of late notice." *Id.* After receiving notice, the insurers "issued reservation of rights letters specifically reserving the defense of late notice, but did not disclaim

---

[2] The Appellate Division made this determination after the Court of Appeals "reversed and remanded the matter to [the Appellate Division] for a determination as to whether . . . insurers waived the defense of late notice under the common law." *Long Island Lighting Co.*, 998 N.Y.S.2d at 171. The Appellate Division pointed out that the Court of Appeals "believed [the Appellate Division] to have applied an incorrect standard, and remanded for a determination of whether the evidence supported the insured's defense of common-law waiver" even "though [the Appellate Division] neither cited nor purported to rely on Section 3420(d)(2) of the Insurance Law, applicable to disclaimers in cases involving bodily injury." *Id.*; *see Long Island Lighting Co. v. Allianz Underwriters Ins. Co.*, 961 N.Y.S.2d 419 (App. Div. 2013), *rev'd sub nom. KeySpan Gas E. Corp. v. Munich Reinsurance Am., Inc.*, 15 N.E.3d 1194 (N.Y. 2014). Nevertheless, the Appellate Division reached the exact same result on remand, essentially that issues of material fact concerning the insured's defense of waiver preclude summary judgment. *Long Island Lighting Co.*, 998 N.Y.S.2d at 171.

on any grounds." *Id.* Instead, the insurers "requested supplemental information." *Id.* After the insureds filed suit, the insurers disclaimed coverage in their answers for improper notice. *Id.* The trial court granted the insurers' motion for summary judgment, but the appellate division vacated the decision, holding that "[t]he evidence supports an inference that [insurers] knew of facts supporting a late notice defense long before disclaiming coverage in their answers." *Id.* The appellate division also noted that one of the insurers' internal memoranda "expressly note[d] the possibility of a late notice defense." *Id.* at 172. The court noted that "waiver is a question for a jury to resolve" and that its ruling was predicated "on facts in the record indicating that [insurers] were aware of a potential late notice defense, yet manifested an intent not to assert one." *Id.*

Here, Indian Harbor has provided no justification for why it waited six months to deny coverage based on allegedly untimely notice. Indian Harbor had all the information it needed to disclaim coverage on the basis of late notice as early as August 26, 2020, when the Airport sent Indian Harbor a copy of the underlying lawsuit and related documents. (Pl.'s SMF ¶¶ 38-41; Def.'s Resp. ¶¶ 38-41.) The Line Strike Suit itself states that the Line Strike occurred on April 9, 2019 and references the Tolling Agreement. (*See* Pl.'s SMF ¶ 34, Def.'s Resp. ¶ 34; Def.'s SAMF ¶ 53.) Indian Harbor specifically acknowledged in an email two days later that "the litigation concerns an April 9, 2019 pipeline strike." (Pl.'s SMF ¶¶ 39, 41; Def.'s Resp. ¶¶ 39, 41; Def.'s SAMF ¶ 56.) While it could have attempted to deny the claim at that time, it instead chose to merely reserve the defense of "timeliness of notice." (Pl.'s SMF ¶¶ 40-41; Def.'s Resp. ¶¶ 40-41.) This fact is critical. Under New York common law, Indian Harbor cannot merely reserve the defense of late notice to assert as a basis for denial months down the road. Under the common law, Indian Harbor was required to disclaim coverage at the time it knew of all the facts giving rise to an untimely

notice defense, if it intended to do so. *See Morrisania Towers Housing Co. Ltd. P'ship*, 963 N.Y.S.2d at 5; *Long Island Lighting Co.*, 998 N.Y.S.2d at 172.

Instead of either providing a defense or denying the claim for late notice, Indian Harbor spent six months apparently digging into extraneous information outside the four corners of the Line Strike Complaint to try to craft a way to avoid coverage based on a strained reading of the Policy. (Pl.'s SMF ¶ 41; Def.'s Resp. ¶ 41.) Specifically, Indian Harbor argued that the Line Strike did not result from "CONTRACTING SERVICES." (Pl.'s SMF ¶ 41; Def.'s Resp. ¶ 41.)

Indian Harbor's CONTRACTING SERVICES argument was its first and primary basis for denying coverage. (*See* Pl.'s SMF ¶ 41; Def.'s Resp. ¶ 41.) Indian Harbor only noted the issue of late notice in its February 18, 2021 denial: "we also note that the Airport Authority did not comply with the [notice] condition since the April 9, 2019 pipeline strike was not reported to [sic] until August 26, 2020." (Pl.'s SMF ¶ 41; Def.'s Resp. ¶ 41.) Indian Harbor was aware of these alleged late notice facts on August 26, 2020. (Pl.'s SMF ¶ 41; Def.'s Resp. ¶ 41.) It did not deny the claim at that time, and instead waited six months to deny the claim for untimely notice. (Pl.'s SMF ¶ 41; Def.'s Resp. ¶ 41.) In doing so, it waived its right to assert that defense.

The common law is strict on insurers disclaiming coverage for late notice. If an insurer does not timely deny coverage for late notice, the insurer waives its right to later deny coverage on that basis. Indian Harbor alleges the Airport's notice was untimely, but Indian Harbor's denial of coverage on that basis six months later eviscerates that claim.

### B.   Even if the Airport's Notice Defenses Do Not Create a Dispute of Material Fact, the Airport's Notice was Timely According to the Terms of the Policy

Indian Harbor misinterprets the Policy by arguing that the Airport had to tender notice as soon as practicable after the April 9, 2019 Line Strike and the April 6, 2020 Tolling Agreement. By the terms of the Policy, notice of each event was permissive, not mandatory. The Policy's

mandatory notice obligation was only triggered when Colonial filed the Line Strike Suit against the Airport. The Airport timely complied with that requirement.

> 1.   The Policy Permits, but Does Not Require, Notice of a POLLUTION CONDITION as Soon as is Practicable.

Indian Harbor argues that it can disclaim coverage because the Airport did not provide timely notice of the POLLUTION CONDITION. Indian Harbor is wrong. The Policy does not impose on the Airport any mandatory duty to report the POLLUTION CONDITION because the notice provision pertaining to a POLLUTION CONDITION is permissive rather than mandatory.

Indian Harbor's proposed construction of the Policy must be rejected because it would render an entire Policy provision superfluous. Indian Harbor contends Section VII.A.1 ***requires*** notice of a "POLLUTION CONDITION" or "PROPERTY DAMAGE which may result in a CLAIM" "as soon as practicable." This contention ignores Section VII.E of the Policy which states that the Airport "***may***" provide Indian Harbor with notice of a "POLLUTION CONDITION" that "may result in a CLAIM." (Pl.'s SMF ¶ 15; Def.'s Resp. ¶ 15; Def.'s SAMF ¶ 54.) It cannot be the case that notice of a POLLUTION CONDITION as soon as is practicable is both mandatory and permissive. If the Court adopts Indian Harbor's proffered interpretation of Section VII.A.1, it would read Section VII.E out of the Policy.

General rules of contract interpretation prohibit such a result. "In interpreting a contract under New York law, 'words and phrases . . . should be given their plain meaning,' and the contract 'should be construed so as to give full meaning and effect to all of its provisions.'" *LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (quoting *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 1993)). To give each provision full meaning and effect, courts must "safeguard against adopting an interpretation that would render any individual provision superfluous." *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314

(2d Cir. 2003) (internal quotation marks omitted) (quoting *Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993)); *see also Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("Under New York law an interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.'" (quoting *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988))). A contract's plain meaning must be construed in reference to the presumption against rendering any term superfluous; if a word or phrase is susceptible to more than one interpretation, but only one interpretation would give every contract provision meaning, then that interpretation shall be adopted. *See, e.g.*, *Hudson Bay Master Fund Ltd. v. Patriot Nat'l*, No. 16 Civ. 2767, 2019 U.S. Dist. LEXIS 56635, at *30–31 (S.D.N.Y. Mar. 28, 2019) ("[E]ven if the ordinary meaning were unclear in this context, [defendant's] interpretation would require this Court to read two different terms synonymously, a construction that would 'violate[] the cardinal rule that a contract should not be read to render any provision superfluous.'" (quoting *Reyes v. Metromedia Software, Inc.*, 840 F. Supp. 2d 752, 756 (S.D.N.Y. 2012) (alteration in original))).

Under Section VII.A.1, the Airport "must notify" Indian Harbor "as soon as practicable" of the following:

    a.    a CLAIM;

    b.    BODILY INJURY or PROPERTY DAMAGE which may result in a CLAIM;

    c.    a POLLUTION CONDITION; ***and***

    d.    a REMEDIATION EXPENSE.

(Pl.'s SMF ¶ 15; Def.'s Resp. ¶ 15.) Section VII.E, in contrast, states that the Airport "***may*** provide written notice of the POLLUTION CONDITION to [Indian Harbor] during the POLICY PERIOD":

> If, during the POLICY PERIOD, any NAMED INSURED first becomes aware of
> a POLLUTION CONDITION for which any INSURED reasonably believes may
> result in a CLAIM (thereafter referred to as a "Circumstance") for which this
> Policy may apply, the NAMED INSURED may provide written notice of the
> POLLUTION CONDITION to the Company during the POLICY PERIOD.

(Pl.'s SMF ¶ 15; Def.'s Resp. ¶ 15; Def.'s SAMF ¶ 54.)

To reconcile Sections VII.A and VII.E, notice is required once each item in Section VII.A is met, but notice is permissive under Section VII.E where only a POLLUTION CONDITION exists. There is no other interpretation of Section VII.A that would give Section VII.E independent meaning; otherwise, the mandatory provision would swallow the permissive and render Section VII.E superfluous and meaningless.

Additionally, New York courts give specific provisions of a contract effect over general provisions where the two are in conflict. *See ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 102 (2d Cir. 2007) ("[W]here there is 'an inconsistency between a specific provision and a general provision of a contract . . ., the specific provision controls.'" (quoting *Muzak Corp. v. Hotel Taft Corp.*, 133 N.E.2d 688, 690 (N.Y. 1956))); *Trans Pacific Leasing Corp. v. Aero Micronesia, Inc.*, 26 F. Supp. 2d 698, 709 (S.D.N.Y. 1998) ("[I]n case of conflict, (1) specific words and clauses control the general . . . ."). Section VII.E provides specific instructions regarding what claimants may do in the event of a "POLLUTION CONDITION." Section VII.A.1, in contrast, describes the insured's mandatory notice obligations when a laundry list of different events occur, including a "POLLUTION CONDITION." The provisions are in conflict because mandating notice of a "POLLUTION CONDITION" as soon as is practicable would render any permissive requirement meaningless. Given that Section VII.E governs only "POLLUTION CONDITIONS," whereas Section VII.A.1 applies to a general list of events that

includes "POLLUTION CONDITIONS," Section VII.E must be given effect when resolving the conflict between the potentially-applicable notice requirements.

At a minimum, the two provisions are ambiguous. New York applies the "well-established contra proferentem principle" to insurance contracts and "requires that the ambiguity be construed against that party." *Westchester Resco Co., L.P. v. New England Reinsurance Corp.*, 818 F.2d 2, 3 (2nd Cir. 1987). Here, Indian Harbor drafted the Policy. (Def.'s SAMF ¶ 53.) Accordingly, the ambiguous provisions must be interpreted in the Airport's favor. Under the Policy, the Airport was not required to give notice of the POLLUTION CONDITION. It was required to give timely notice of a CLAIM—here the Line Strike Suit, and it did so.

>2.   The Airport Was Not Required to Give Notice of the Tolling Agreement.

In an effort to avoid the terms of its own Policy, Indian Harbor argued, for the first time when it filed its Complaint, that a CLAIM arose when Colonial and the Airport negotiated or executed the Tolling Agreement. (Def.'s SAMF ¶ 57.) Indian Harbor's contention ignores the language of the Policy. Colonial plainly did not assert a CLAIM, as defined by the Policy, until it initiated the Line Strike Suit.

As previously discussed, Indian Harbor waived any notice defense by asserting it six months after it had all of the facts available to it regarding the notice defense. Furthermore, specific to the Tolling Agreement, Indian Harbor waived any argument denying coverage based on the Airport's alleged failure to notify Indian Harbor of the Tolling Agreement because Indian Harbor failed to assert that defense in its first letter denying coverage. (Pl.'s SMF ¶¶ 41-42; Def.'s Resp. ¶¶ 41-42; Def.'s SAMF ¶ 57.) "New York law establishes that an insurer is deemed, as a matter of law, to have intended to waive a defense to coverage where other defenses are asserted, and where the insurer possesses sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense." *New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir. 1991).

Thus "the act by an insurer of disclaiming on certain grounds but not others is deemed *conclusive* evidence of the insurer's intent to waive the unasserted grounds." *Id.* at 1432. Indian Harbor knew, as early as August 26, 2020, that the Airport and Colonial entered into a Tolling Agreement because the Line Strike Complaint references the Tolling Agreement. (Pl.'s SMF ¶ 38; Def.'s Resp. ¶ 38; Def.'s SAMF ¶ 53.) Indian Harbor specifically acknowledged that "Colonial and the Airport . . . entered into a [T]olling [A]greement on April 6, 2020," in its February 18, 2021 denial letter. (Def.'s SAMF ¶ 57.) Despite acknowledging the Tolling Agreement, Indian Harbor did not deny coverage for untimely notice of the Tolling Agreement--instead it merely alleged untimely notice of the Line Strike. (Pl.'s SMF ¶¶ 41-42; Def.'s Resp. ¶¶ 41-42.)

The Policy defines "CLAIM" as "a monetary demand or notice, or assertion of a legal right alleging liability or responsibility on the part of any INSURED and includes a lawsuit, petition, or governmental regulatory action commenced against any INSURED." (Pl.'s SMF ¶ 16; Def.'s Resp. ¶ 16.) The last list does not include a broad, catch-all prefatory clause (like "includes but not limited to"), or a catch-all phrase at the end of the list (like "or documents otherwise evidencing a right of action"). Rather, the list includes only the terms mentioned. As the Tolling Agreement is not a "lawsuit, petition, or governmental regulatory action," it is not a CLAIM. *See La Guardia v. Cavanaugh*, 53 N.Y.2d 67, 79 (1981) ("[T]he express inclusion of a particular thing implies the omission of others . . . .").

Even if "includes" is read inclusively, the Tolling Agreement does not fall within the definition of CLAIM. The Tolling Agreement does not "alleg[e] liability or responsibility on the part of" the Airport. Rather, it merely provides notice of a *potential* claim, explicitly stating that Colonial and the Airport were "interested in resolving by agreement potential claims between them" and "[n]either the execution of this Agreement nor the agreement to any of its provisions

constitutes an admission of liability." (Pl.'s SMF ¶¶ 30-31, Def.'s Resp. ¶¶ 30-31.) Nothing in the Tolling Agreement shows that Colonial was "alleging liability or responsibility on the part" of the Airport. Thus, the Tolling Agreement, by its terms, fall outside the scope of what constitutes a CLAIM.

Accordingly, no "CLAIM" occurred until Colonial filed the Line Strike Suit on July 31, 2020. Thus the Line Strike Suit triggered the Airport's mandatory notice obligation. The Airport undisputedly notified Indian Harbor within one month of receiving the Line Strike Complaint. (Pl.'s SMF ¶¶ 34, 38; Def.'s Resp. ¶¶ 34, 38.) Indian Harbor cannot reasonably argue that notice within one month of the filing of the Line Strike Suit was not "as soon as practicable" where Indian Harbor took over six times longer to respond to the Airport's notice.

In *State Farm Mut. Auto. Ins. Co. v. Linero*, the Appellate Division affirmed the trial court's decision that the insured gave notice "as soon as practicable" where the insured gave notice about a month after her claim became viable. 786 N.Y.S.2d 580, 581 (App. Div. 2004) . The accident occurred on March 16, 2001, but the insured found out on July 3, 2002, that the other driver was uninsured. *Id.* at 580-81. The Appellate Division held that the insured "provided the requisite notice in a sufficient fashion" "to satisfy the 'as soon as practicable' requirement of the SUM endorsement of the [insurer's] policy" where she sent letters to the insurer "in August 2002 and . . . September 18, 2002." *Id.* at 581.

Accordingly, the Court should deny summary judgment because the Airport timely notified Indian Harbor under the Policy because it gave Indian Harbor notice of the Line Strike Suit on August 26, 2020 (less than one month after the initial filing of the Line Strike Suit on July 31, 2020). (Pl.'s SMF ¶¶ 34, 38; Def.'s Resp. ¶¶ 34, 38.)

**C.      Alternatively, Indian Harbor Must Demonstrate Prejudice from Delayed Notice, a Burden it Has Failed to Meet.**

Indian Harbor contends that the Airport's alleged untimely notice of the Line Strike provides Indian Harbor the right to deny coverage without having to come forward with proof it suffered any prejudice from the delay.  In support, Indian Harbor argues that, under N.Y. Insurance Law § 3420(a)(5), prejudice need only be shown to deny coverage under insurance policies "issued or delivered in New York," leaving all other policies subject to the common law no-prejudice rule (and allowing Indian Harbor to continue the practice of including New York choice of law provisions in its policies and deliberately issuing its policies from outside of New York to non-citizens of New York, despite the fact that neither Indian Harbor nor its insured is a New York citizen).[3] This position would render N.Y. Insurance Law § 3420(a)(5) unconstitutional because it discriminates on the basis of citizenship without adequate justification.

Indian Harbor relies on *Indian Harbor Ins. Co. v. City of San Diego*, 972 F. Supp. 2d 634, 648 (S.D.N.Y. 2013), to support its contention that the late prejudice statute does not apply to the Policy. That case, however, is not dispositive as neither party raised the constitutional issues to the trial court or appellate court, and therefore, the Court was not presented with the question of constitutionality.

The purpose of N.Y. Insurance Law § 3420(a)(5) is to direct all policies "issued or delivered" in New York to contain certain provisions, including a provision stating that untimely

---

[3] Indian Harbor omits N.Y. Insurance Law § 3420(c)(2)(A): "**In any action** in which an insurer alleges that it was prejudiced as a result of a failure to provide timely notice, the burden of proof shall be on: (i) the insurer to prove that it has been prejudiced, if the notice was provided within two years of the time required under the policy . . . ." (emphasis added). In other words, when—as here—an insured provides notice of claim within two years of a covered occurrence, the insurer bears the burden to show it was prejudiced by delayed notice thereof.

notice "shall not invalidate a claim . . . unless the failure to provide timely notice has prejudiced the insurer." N.Y. Ins. Law § 3420(a)(5). N.Y. Insurance Law § 3420(a)(5) does not by its terms state that insurers bear the burden of showing prejudice only on policies issued or delivered in New York. In other words, N.Y. Insurance Law § 3420(a)(5) does not affect parties' rights in litigation; instead, it describes the required contents of insurance policies issued or delivered in New York.

Indian Harbor's reading of N.Y. Insurance Law § 3420 would render the statute unconstitutional because it would require the statute mandate differential treatment of in-state and out-of-state insureds without sufficient justification. Where a state economic regulation benefits in-state citizens at the expense of out-of-state citizens, it implicates constitutional scrutiny under the Commerce Clause, the Privileges and Immunities Clause of the Fourteenth Amendment, and the Equal Protection Clause of the same. *Cf. W. & S. Life Ins. Co. v. State Bd. Of Equalization of Cal.*, 451 U.S. 648, 656 (1981). Here, the New York law raises questions under both the Dormant Commerce Clause and the Privileges and Immunities Clause.

1. <u>Indian Harbor's Contention that New York has a Dual-Class Notice Regime Would Render the Regime Unconstitutional Under the Dormant Commerce Clause</u>

The "Dormant Commerce Clause"[4] generally prohibits states from enacting legislation that "mandate[s] 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Granholm v. Heald*, 544 U.S. 460, 472 (2005) (quoting *Or. Waste Sys., Inc. v. Dep't Env't Quality of Or.*, 511 U.S. 93, 99 (1994)). A facially discriminatory state

_____

[4] The Commerce Clause vests Congress with the power to regulate interstate commerce. See U.S. Const. art. I, § 8, cl. 3. Courts have construed the Commerce Clause to establish a presumption against state regulations burdening interstate commerce, commonly referred to as the "Dormant Commerce Clause." *See City of Philadelphia v. New Jersey*, 437 U.S. 617 (1978).

law is *per se* invalid unless "there is no other means to advance a legitimate local purpose." *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 330 (2007). An exception arises where Congress exempts, from Commerce Clause scrutiny, the area of law under which the state burdens interstate commerce. *W. & S. Life Ins. Co.*, 451 U.S at 652–53.

Congress substantially reduced the Commerce Clause scrutiny applied to state laws regulating insurance when it enacted the McCarran-Ferguson Act ("the Act"), 15 U.S.C. §§ 1011, *et seq.* The Act mandates that "the business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012. Thus, states' discriminatory taxes and regulations do not offend the Dormant Commerce Clause to the extent the taxes and regulations affect "the business of insurance" and "person[s] engaged therein." *Id.*

Here, the discriminatory regulations—if interpreted in the manner Indian Harbor propounds—do not affect "the business of insurance," because they *impose* a set of disparate rights upon consumers instead of dictating how insurers and policyholders may allocate their respective rights by agreement. *Cf. SEC v. Nat'l Secs., Inc.*, 393 U.S. 453, 460 (1969) ("The *relationship* between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement -- these were the core of the 'business of insurance.'" (emphasis added)).  Under Indian Harbor's construction, the New York statute is *per se* invalid because it facially discriminates against, primarily, those residing outside New York who hold insurance policies governed by New York law. There is no legally protected interest New York could claim in imposing the disparate treatment upon non-citizens, rendering it invalid unless saved by the McCarran-Ferguson Act.

The Act does not save Indian Harbor. The Act only tolerates discriminatory taxes and regulations affecting the "business of insurance, and every person engaged therein." In the context of liability insurance, the "business" of insurance concerns the rights provided under insurance policies, not how insureds may vindicate those rights depending on where they reside. *See Nat'l Secs., Inc.*, 393 U.S. at 460. To the extent the New York statute prejudices out-of-state insureds' ability to claim insurance coverage benefits relative to in-state insureds, even when those two classes of policyholders have policies containing identical terms, the Act is not operative. The relationship the regulation governs is not that between insurer and insured; it is between the insured and the State of New York, a relationship that does not concern the "business of insurance." *Cf. Nat'l Secs., Inc.*, 393 U.S. at 460 ("Whatever the exact scope of the statutory term, it is clear where the focus was -- it was on the relationship between the insurance company and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating the 'business of insurance.'").

The vast majority of cases construing the Act have addressed discriminatory taxes, finding them valid, but this case does not concern a tax. *See W. & S. Life Ins. Co.*, 451 U.S. at 653 (finding discriminatory taxes valid). Appellate cases addressing discriminatory insurance regulations have considered regulations discriminating against out-of-state insurers to protect insureds, but not regulations that limit out-of-state insureds' substantive rights relative to in-state insureds. *See, e.g.*, *Coventry First, LLC v. McCarty*, 605 F.3d 865 (11th Cir. 2010) (upholding law regulating viatical settlement providers); *Life Partners., Inc. v. Morrison*, 484 F.3d 284 (4th Cir. 2007), *cert. denied*, 552 U.S. 1062 (2007) (same). Thus, at minimum, there are substantial questions whether the McCarran-Ferguson Act would render the New York statute constitutional. Nevertheless, given

the New York law's imposition upon insured's rights, the law's sweep escapes the Act's protection, rendering the New York statute unconstitutional.

2.     <u>Additionally, Indian Harbor's Dual-Class Notice Regime Argument Would Render New York's Law Unconstitutional Under the Privileges and Immunities Clauses</u>

Article IV of the United States Constitution provides, "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1. The Clause prohibits states from denying out-of-state residents the privileges of those enjoyed by those in the state. *See Travis v. Yale & Towne Mfg. Co.*, 252 U.S. 60, 79–81 (1920) (finding unconstitutional a New York tax law that provided resident taxpayers certain exemptions without granting the same exemptions to non-resident taxpayers); *Paul v. Virginia*, 75 U.S. 168, 179 (1869) ("It was undoubtedly the object of the clause in question to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned. It relieves them from the disabilities of alienage in other States; it inhibits discriminating legislation against them by other States."). Under the Clause, "a general rule, operating to the disadvantage of all non-residents including those who are citizens of the neighboring States, and favoring all residents" is unconstitutional. *Travis*, 252 U.S. at 81.

Likewise, the Fourteenth Amendment contains a Privileges and Immunities Clause providing, "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. amend. XIV, § 1. The Clause only extends to fundamental rights—including the right to enforce contracts—and "bar[s] discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Toomer v. Witsell*, 334 U.S. 385, 396 (1948); *United States v. Kopp*, 110 F. 160, 164 (W.D. Wash. 1901) ("The rights, privileges, and immunities of citizenship in this country include, among others, the right to make and enforce contracts . . . ."

21

(internal quotation marks omitted) (quoting *United States v. Stanley*, 109 U.S. 3, 22 (1883))). To survive scrutiny, the party defending the challenged law must demonstrate that "substantial reasons exist for the discrimination and the degree of discrimination bears a sufficiently close relation to such reasons." *Supreme Court of Va. v. Friedman*, 487 U.S. 59, 64 (1988).

Here, Indian Harbor contends that New York burdens the Airport's ability to enforce its contractual remedies for no reason other than its receipt of its policy outside of New York (and Indian Harbor's deliberate attempt to use a loophole by issuing the Policy outside of New York when Indian Harbor affirmatively admitted that it does issue some policies from New York to New York insureds (*see* D.E. 17 ¶ 10)). Following the logic of Indian Harbor's argument, if the Airport were a New York citizen, the Airport would be able to claim insurance coverage benefits under § 3420(a)(5)'s notice-prejudice rule; but if the Airport is subject to New York common law because the Policy was not delivered in New York, then the Airport could lose its insurance coverage benefits irrespective of any prejudice to Indian Harbor. Indian Harbor bears the burden to demonstrate that there is a substantial reason for New York's legal regime to impose the challenged discrimination, which it cannot do. Accordingly, Indian Harbor's interpretation of N.Y. Insurance Law § 3420 is unconstitutional under the Privileges and Immunities Clause.

## V.    CONCLUSION

For any or all of the foregoing reasons, Indian Harbor's Motion for Summary Judgment should be denied.

DATED:   March 11, 2022

New York, New York

Respectfully submitted,

s/ Jacob D. Alderdice

Mark M. Bell (5677323)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
(615) 244-6380
mark.bell@wallerlaw.com

Jacob D. Alderdice
JENNER & BLOCK LLP
1155 Avenue of the Americas, 30th Floor
New York, NY 10036
Tel.: (212) 891-1600
Fax: (212) 891-1699
JAlderdice@jenner.com

David M. Kroeger (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street,
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484
DKroeger@Jenner.com

*Counsel for Defendant,*
*Metropolitan Nashville Airport Authority*

23

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on March 11, 2022, he caused the

attached **Defendant Metropolitan Nashville Airport Authority's Response in Opposition to**

**the Motion for Summary Judgment** to be served upon all counsel of record via this Court's

electronic filing system.


<u>s/ Jacob D. Alderdice            </u>